**FERGUSON CASE ORR PATERSON LLP**
David L. Shain, Esq.
1050 South Kimball Road
Ventura, California 93004
Telephone: (805) 659-6800
Fax Number: (805) 659-6818
E-mail: dshain@fcoplaw.com

Attorneys for Plaintiff
DAVID MONTGOMERY,
Individually and as Guardian ad Litem of
MICHAEL DEAN MONTGOMERY, a Minor

### IN THE UNITED STATES DISTRICT COURT

### FOR THE SOUTHERN DISTRICT

| | |
|---|---|
| DAVID MONTGOMERY, Individually and as Guardian ad Litem of MICHAEL DEAN MONTGOMERY, a Minor,<br><br>Plaintiff,<br>v.<br><br>BLITZ U.S.A., INC., and BLITZ ACQUISITIONS, LLC; and Does 1 through 20, inclusive,<br><br>Defendants. | **'11CV0999 JLS  POR**<br>**COMPLAINT FOR:**<br>(1) STRICT LIABILITY;<br>(2) NEGLIGENCE;<br>(3) BREACH OF WARRANTY<br>(4) MISREPRESENTATION;<br>(5) VIOLATIONS OF CONSUMER PRODUCT SAFETY ACT;<br>(6) NEGLIGENCE PER SE;<br>(7) ALTER EGO;<br>(8) DAMAGES;<br>(9) EXEMPLARY DAMAGES<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, David Montgomery, Individually and as Guardian ad Litem of Michael Dean Montgomery, a Minor, and complains of Defendants, Blitz U.S.A., Inc. and Blitz Acquisitions, LLC, as follows:

**PARTIES**

1. Plaintiff, David Montgomery ("Montgomery"), is an individual who is a citizen of the State of Nevada and is the natural father and guardian of Michael Dean Montgomery ("Michael").

2. Defendant, Blitz U.S.A., Inc. ("Blitz"), is an Oklahoma corporation that maintains its principal place of business in the State of Oklahoma.  Blitz has engaged in business in the State of California and this lawsuit arises from that business; however, Blitz does not maintain a designated

agent for service of process in California. Blitz may be served with process by serving its registered agent, John R. Elmburg, at 404 26th Avenue, N.W., Miami, Oklahoma 74354.

3. Blitz is wholly owned by Defendant, Blitz Acquisitions, LLC ("Blitz Acquisitions"), a Delaware limited liability company that does not maintain a regular place of business in the State of California. Blitz Acquisitions has engaged in business in the State of California and this lawsuit arises from that business; however, Blitz Acquisitions does not have a designated agent for service of process in California. Blitz Acquisitions may be served with process by serving its registered agent, Corporation Service Company, at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 because diversity of citizenship exists between Plaintiff and Defendants. Plaintiff is a citizen of the State of Nevada, and Defendants are foreign businesses that maintain their principal places of business outside of the State of California.

5. The amount in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand and No/100 Dollars ($75,000.00).

6. This Court also has jurisdiction over this lawsuit because Plaintiff asserts a claim for damages under the Consumer Product Safety Act, 15 U.S.C. § 2072.

7. This Court has jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting activities in the State of California and, by placing their portable gasoline containers, including the subject container, into the stream of commerce, have established continuous and systematic contacts sufficient to confer jurisdiction.

8. Jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process.

9. Venue in this district is proper under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and/or omissions giving rise to this claim occurred in San Diego County, which is within the Southern District of California.

/ / /

2
COMPLAINT

**FACTS AND GENERAL ALLEGATIONS**

10. On the afternoon of June 20, 2002, nine-year-old Michael and two friends, ages ten and eleven, were playing in the backyard of a home in Lemon Grove, California where Michael resided with his mother.

11. While playing in the backyard, one of the boys lit weeds with a lighter. Without warning, a nearby two plus gallon Blitz plastic gasoline container, Model Number 11810, suddenly and violently exploded.

12. As a result of the explosion, the boys were instantly covered with fire and burning gasoline with Michael suffering the bulk of the blast.

13. While his friends ran for help, Michael ran towards the front of the home where a neighbor helped extinguish the flames on Michael's burning body.

14. Michael was immediately transported to the UCSD Medical Center burn unit where he underwent countless surgeries, procedures, and treatments, most of which were excruciatingly painful. Three months later, he was transferred to Shriners Children's Hospital in Sacramento where he received three months of additional treatment until he was able to be released into his father's care.

15. As a result of the explosion and the ensuing fire, Michael suffered disfiguring, catastrophic third-degree burns over a substantial portion of his body.

16. Upon information and belief, the cigarette lighter ignited gasoline vapors outside the plastic gasoline container and the flame followed the vapor trail back inside the container causing it to explode and/or shoot flames from the nozzle of the container like a flame thrower.

17. Defendants, the largest manufacturer of portable plastic gasoline containers in the United States, designed, manufactured, assembled, marketed, distributed, and sold the gasoline container that caused Michael's injuries.

18. The container was not modified or altered after it left Defendants' control, and the container was being used in an ordinary and foreseeable manner.

19. As a result of Defendants' acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the container, Michael suffered, and continues to

suffer, severe personal injuries, physical pain and impairment, physical disfigurement, and mental anguish caused by the explosion.

20. Further, as a result of his injuries, Plaintiff has incurred significant medical and related expenses and Michael will require additional medical care in the future, resulting in additional expenses.

21. Michael's injuries are permanent and his ability to perform ordinary activities and enjoy life has been permanently and adversely affected.

## FIRST CAUSE OF ACTION

### (Strict Liability)

22. Plaintiff adopts the allegations of paragraphs 1 - 21 above and incorporates the same where relevant.

23. The Blitz portable gasoline container that caused Michael's injuries was defective.

24. Defendants are engaged in the business of designing, manufacturing, assembling, marketing, distributing, and selling portable gasoline containers, including the container in the present case, to consumers within the stream of commerce.

25. Defendants expected their portable gasoline containers, so introduced and passed on in the course of trade, to ultimately reach consumers and/or users without substantial change in the condition in which they were originally manufactured and sold.

26. Similarly, Defendants knew their portable gasoline containers, so introduced and passed on in the course of trade, would be used by those consumers and/or users without inspection for defects.

27. The portable gasoline container in the present case did in fact reach the consumer and/or user without substantial change in the condition in which it was originally manufactured and sold by Defendants and unexpectedly exploded under ordinary and foreseeable use.

28. At the time the portable gasoline container left Defendants' control, and at all times complained of, a safer alternative design was available that would have eliminated the risk of such an explosion without substantially impairing the usefulness and intended purpose of the product.

///

29. The portable gasoline container was defective in that its design did not incorporate a flame arrester, an essential safety device that would have prevented the explosion that occurred in the present case.

30. A flame arrester, sometimes called a flash arrester or spark arrester, is a small metal device that is placed in a container's openings and allows liquids to flow out of the container but prevents the flashback of flames back into the container. The device consists of either a perforated metal disc or a woven wire mesh screen.

31. The efficacy of flame arresters has been known to the manufacturing industry, particularly to the manufacturers of portable gasoline containers, since the early 1970's. Flame arresters were first placed in industrial gasoline containers in the 1950's and began being placed in consumer gasoline containers in 1978.

32. For more than a quarter century, the utility and efficacy of flame arresters in the context of consumer gasoline containers has been a topic of discussion in the media and national publications and the subject of numerous lawsuits filed by consumers, users, and bystanders that have been burned and/or killed in encounters with portable gasoline containers that were not equipped with the device.

33. Consequently, Defendants have known, or should have known, for decades prior to this incident that gasoline containers without flame arresters are susceptible to flashback (i.e., when gasoline vapors outside the container ignite, the flames can follow the vapor trail back inside the container causing it to explode and/or spew flames and burning gasoline), which poses a substantial danger to consumers and/or users of the product.

34. Nevertheless, despite the wealth of available scientific knowledge, Defendants have made, and continue to make, a conscious decision to endanger the safety of consumers, users, and bystanders by refusing to incorporate this simple, well-known safety device into their portable gasoline containers, even when it is apparent within the industry that the small, metal devices are both economically and technologically feasible.

35. The use of the portable gasoline container in the present case was, or should have been, reasonably foreseeable to Defendants.

36. Without a flame arrester, the portable gasoline container did not perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner such as that in the present case.

37. Without a flame arrester, the foreseeable risk of injury and/or death associated with the use of the portable gasoline container far exceeded any utility and/or benefits associated with its design.

38. Further, the portable gasoline container was defective in that Defendants failed to provide adequate warnings of the potential dangers associated with the uses and misuses of their product, specifically the potential for flashback, which would not be apparent to the ordinary consumer and/or user.

39. At the time the portable gasoline container left Defendants' control, consumers, bystanders, and/or foreseeable users, such as Michael, were not, and still are not, likely to possess knowledge of the extent and magnitude of the risks associated with using these portable gasoline containers as designed, nor could they possibly appreciate the severity of injuries that are likely to occur.

40. Without such knowledge, consumers, bystanders, and/or foreseeable users, such as Michael, would not be in a position to avoid the product's inherent dangers through the exercise of ordinary and reasonable care. Conversely, Defendants knew, and were certainly in the best position to know, that their portable gasoline containers, as designed, posed a tremendous and horrific risk of injury and death to consumers, users, and bystanders.

41. Defendants' acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the defective portable gasoline container were the proximate cause and/or substantial factor in causing Michael's injuries.

## SECOND CAUSE OF ACTION

**(Negligence)**

42. Plaintiff adopts the allegations of paragraphs 1 - 41 above and incorporates the same where relevant.

///

43. Defendants owed consumers, bystanders, and/or foreseeable users, including Michael, the duty of care of a reasonably prudent manufacturer in the design, manufacture, assembly, marketing, distribution, and sale of their portable gasoline containers.

44. Defendants ignored and/or breached their duty of care by their following negligent acts and/or omissions:

A. Failed to design, manufacture, assemble, market, distribute, and sell a reasonably safe portable gasoline container;

B. Designed, manufactured, assembled, marketed, distributed, and sold a portable gasoline container that was defective;

C. Placed into the stream of commerce a portable gasoline container that was defective in design;

D. Placed into the stream of commerce a portable gasoline container that was defective in that it failed to contain adequate warnings and instructions;

E. Placed into the stream of commerce a portable gasoline container that was unfit for its foreseeable and intended uses;

F. Placed into the stream of commerce a portable gasoline container likely to cause injury under ordinary and foreseeable use;

G. Failed to guard against flashback in the product design;

H. Failed to incorporate a flame arrester in the product design;

I. Failed to incorporate explosion proofing material in the product design;

J. Failed to incorporate an explosion suppression system in the product design;

K. Failed to inspect for defects in the product design;

L. Failed to guard against the product's hidden or latent defects;

M. Failed to properly test its portable gasoline containers and prototypes thereof with flame arresters and/or explosion suppression materials;

N. Failed to properly inspect and/or test its portable gasoline containers for susceptibility to flashback explosions;

///

O. Failed to provide adequate instructions and/or warnings with the product after learning, knowing, or having reason to know, of the defects existing in the product that rendered it unreasonably dangerous when used in a reasonably foreseeable manner;

P. Failed to provide adequate instructions and/or warnings with the product after learning, knowing, or having reason to know that consumers and/or users of the product would not realize the potential dangers associated with ordinary and foreseeable use ;

Q. Failed to provide adequate instructions and/or warnings with the product after learning, knowing, or having reason to know that a reasonable manufacturer would have warned of the potential dangers associated with ordinary and foreseeable use under same or similar circumstances;

R. Failed to adequately warn consumers and/or users of the product of the inherent dangers associated with use of its portable gasoline containers;

S. Failed to actively seek information regarding incidents in which consumers, users, and bystanders were injured and/or killed when they encountering such portable gasoline containers;

T. Failed to actively seek information regarding incidents involving explosion and/or internal combustion of portable gasoline containers;

U. Failed to protect foreseeable users of the portable gasoline containers from the dangers present in the use of their containers that it knew or should have known existed;

V. Failed to give adequate notice to consumers and users of the concealed danger, namely that gasoline vapors outside the container, when exposed to an ignition source, can ignite and that the ensuing flames can travel back inside the container, causing internal combustion and explosion;

/ / /

/ / /

W.  Failed to provide post-sale warnings after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended use;

X.  Failed to take subsequent remedial measures to recall or retrofit the product after learning, knowing, or having reason to know of the defects existing in the product that rendered it unreasonably dangerous for its intended and foreseeable uses;

Y.  Failed to take subsequent remedial measures to recall or retrofit the product after learning, knowing, or having reason to know that a reasonable manufacturer would have recall or retrofitted the product under same or similar circumstances;

Z.  Ignored or failed to investigate complaints about the defects existing in the product that rendered it unreasonably dangerous for its intended use;

AA.  Ignored or failed to investigate scientific, technological, and industry information and studies regarding the efficacy of flame arresters and/or explosion suppression materials;

BB.  Ignored or failed to investigate media reports and national publications relating to the dangers and risks involved with the use of portable gasoline containers that do not contain flame arresters;

CC.  Ignored and/or failed to investigate other lawsuits involving similar claims and incidents in which consumers, users, and/or bystanders were severely and routinely burned and/or killed when encountering such portable gasoline containers;

DD.  Ignored and/or failed to investigate similar incidents involving portable gasoline containers; and/or

EE.  Failed to report incidences and lawsuits involving other consumers, users, and bystanders, who have been burned and/or killed when encountering the portable gasoline containers to the Consumer Product Safety Commission.

45.  As an actual and proximate result of Defendants' negligent acts and/or omissions, the portable gasoline container that caused Michael's injuries was placed into the stream of commerce in a defective and unreasonably dangerous condition.

46. As an actual and proximate result of Defendants' negligent acts and/or omissions, Michael and Plaintiff were subjected to the occurrence which makes the basis of this suit and have suffered the resulting injuries and damages described herein.

47. Michael's injuries and the manner in which they occurred were reasonably foreseeable to Defendants who had actual and/or constructive knowledge, from within the industry, national publications, and prior lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering their portable gasoline containers.

48. Defendants' acts and/or omissions in the design, manufacture, assembly, marketing, distribution, and sale of the defective portable gasoline container were the proximate cause and/or substantial factor in causing Michael's injuries.

### THIRD CAUSE OF ACTION

### (Breach of Warranty)

49. Plaintiff adopts the allegations of paragraphs 1 - 48 above and incorporates the same where relevant.

50. Defendants, by and through the sale of their portable gasoline container, expressly and impliedly warranted to the consumer and/or foreseeable users, such as Michael, that the container was reasonably safe and fit for its ordinary and foreseeable purposes.

51. Defendants knew, or should have known, that consumers and/or users, such as Michael, intended to use their portable gasoline containers for ordinary and foreseeable purposes and that consumers and/or users, such as Michael, were relying on Defendants' skill and judgment in designing and manufacturing containers suitable for those purposes.

52. Michael made ordinary and foreseeable use of the container in reliance on said warranties.

53. Contrary to said warranties, the portable gasoline container was defective and unfit for its ordinary and foreseeable purposes, rendering it unreasonably dangerous.

54. As an actual and proximate result of Defendants' breach of said warranties, the portable gasoline container was placed into the stream of commerce in a defective and unreasonably dangerous condition.

55. As an actual and proximate result of Defendants' breach of said warranties, Michael suffered catastrophic burn injuries when the container unexpectedly and violently exploded.

56. Michael's injuries and the manner in which they occurred were reasonably foreseeable to Defendants who had actual and/or constructive knowledge, from within the industry, national publications, and prior lawsuits, that consumers, users, and bystanders were being routinely burned and/or killed when encountering their portable gasoline containers.

57. Defendants breached their express and implied warranties by the failure of the gasoline container itself and by improper marketing (i.e., failure to warn of the risks associated with the use of their product and failure to provide instructions for safe operation).

## FOURTH CAUSE OF ACTION

### (Misrepresentation)

58. Plaintiff adopts the allegations of paragraphs 1 - 57 above and incorporates the same where relevant.

59. Defendants are strictly liable to Plaintiff pursuant to § 402B of the Restatement (Second) of Torts, for misrepresenting to consumers and/or foreseeable users, such as Michael, that their portable gasoline containers were safe and without defect.

60. Such representation was false and involved a material fact concerning the character or quality of the gasoline container in question.

61. Michael, justifiably relied on such representation, which constituted a proximate and producing cause of his injuries.

## FIFTH CAUSE OF ACTION

### (Violations of the Consumer Product Safety Act)

62. Plaintiff adopts the allegations of paragraphs 1 - 61 above and incorporates the same where relevant.

63. Pursuant to § 23(a) of the Consumer Product Safety Act, 15 U.S.C. § 2072, Defendants are liable for the following:

    A. Failing to report a defective and potentially hazardous product to the Consumer Product Safety Commission as required by § 15(b) of the Act, 15 U.S.C. § 2064;

B.  Failing to report information pertaining to settled or adjudicated lawsuits for death or grievous bodily injury to the Consumer Product Safety Commission as required by § 37 of the Act, 15 U.S.C.A. § 2084.

64. Defendants' violations of the consumer product safety rules were done knowingly and/or willfully.

65. Defendants' failure to report the prior claims and/or potential hazards associated with their portable gasoline containers was a proximate cause of Michael's injuries.

## SIXTH CAUSE OF ACTION

### (Negligence Per Se)

66. Plaintiff adopts the allegations of paragraphs 1 - 65 above and incorporates the same where relevant.

67. Defendants' failure to report the prior claims and/or potential hazards associated with their portable gasoline containers as required by the Consumer Product Safety Act, 15 U.S.C. § 2064, 2084, constituted negligence per se.

68. As a user of a consumer product, Michael was a member of the class of persons the statute was designed to protect and his injuries are of the type the statute was designed to prevent.

69. Because Defendants failed to report the prior claims and/or potential hazards associated with their defective and unreasonably dangerous portable gasoline containers, it was foreseeable that a user of the product, such as Michael, could be severely injured and/or killed when the container unexpectedly and violently exploded.

70. Defendants' violations of the consumer product safety rules were done without excuse.

71. Defendants' failure to report the prior claims and/or potential hazards associated with their portable gasoline containers was a proximate cause of Michael's injuries.

## ALTER EGO

72. Plaintiff adopts the allegations of paragraphs 1 - 71 above and incorporates the same where relevant.

73. Based upon information and belief, Plaintiff asks that this Court disregard the corporate form of Blitz and/or Blitz Acquisitions because:

    A. The form was used as a sham to perpetrate a fraud;

    B. The form was organized and is being operated as a mere tool and/or business conduit of another;

    C. The entity was, and is, inadequately capitalized so as to work an injustice;

    D. The entity was created and being used to evade legal obligations and/or duties; and

    E. The two entities were, and still are, operating as a single business enterprise.

## DAMAGES

74. Plaintiff adopts the allegations of paragraphs 1 - 73 above and incorporates the same where relevant.

75. Plaintiff seeks all damages recoverable under both statutory and common law.

76. As a direct and proximate result of Defendants' acts and/or omissions, Michael suffered severe, painful, and catastrophic burn injuries, which resulted in the following damages:

    A. Past and future medical expenses;

    B. Past and future mental anguish;

    C. Past and future physical pain and suffering;

    D. Past and future physical impairment;

    E. Past and future physical disfigurement;

    F. Past and future lost earnings;

    G. Loss of future earning capacity; and

    H. Loss of consortium.

## EXEMPLARY DAMAGES

77. Plaintiff adopts the allegations of paragraphs 1 - 76 above and incorporates the same where relevant.

78. Defendants' acts and/or omissions pertaining to the design, manufacture, assembly, marketing, distribution, and sale of their portable gasoline containers were done with a willful and conscious disregard of the rights and safety of consumers, users, and bystanders.

79. In addition, Defendants' acts and/or omissions pertaining to the design, manufacture, assembly, marketing, distribution, and sale of their portable gasoline containers constituted an intentional misrepresentation, deceit, and concealment of a material fact known by Defendants to cause injury to consumers, users, and bystanders.

80. Thus, Plaintiff is entitled to exemplary damages for injuries resulting from this malicious and fraudulent conduct in an amount to be determined by a jury.

81. Further, Defendants' acts and/or omissions pertaining to the design and production of their portable gasoline containers, when viewed objectively from Defendants' standpoint at the time of the occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others from gasoline containers that are highly susceptible to explosions.

82. Moreover, Defendants had actual, subjective awareness of such risk but nevertheless proceeded with conscious indifference to the rights, safety, and welfare of others.

83. Defendants' acts and/or omissions constituted a flagrant disregard for the safety of consumers, users, and bystanders that encounter their portable gasoline containers, including Michael.

84. Thus, Plaintiff is entitled to exemplary damages for injuries resulting from gross negligence in an amount to be determined by a jury.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For damages in excess of $75,000 sustained by Plaintiff including, but not limited to, those damages set forth above in an amount to be determined by the trier of fact;

B. For exemplary damages in an amount to be determined by the trier of fact;

C. For reasonable attorney's fees as provided by 15 U.S.C. § 2072;

D. For pre-judgment and post-judgment interest;

///

///

///

1. E. For all costs of Court; and
2. F. For any such further relief that Plaintiff may be justly entitled.
3. Dated: March 6, 2011                FERGUSON CASE ORR PATERSON LLP

S/David L. Shain
Attorneys for Plaintiff
David Montgomery, Individually
and as guardian ad litem of
Michael Dean Montgomery, a Minor

COMPLAINT

**DEMAND FOR JURY TRIAL**

Plaintiff, David Montgomery, Individually and as Guardian ad Litem of Michael Dean Montgomery, a Minor, hereby demands a jury trial on all issues so triable.

Dated: March 6, 2011	FERGUSON CASE ORR PATERSON LLP


S/David L. Shain
Attorneys for Plaintiff
David Montgomery, Individually
and as guardian ad litem of
Michael Dean Montgomery, a Minor

NOTICE OF MOTION TO TRANSFER VENUE AND REQUEST FOR SANCTIONS